# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 509 | **DATE** | 8/23/2001 |
| **CASE TITLE** | Canal Barge vs. ComEd | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order: Canal Barge's Motion to Compel [79-1], [79-2] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 24 2001 date docketed | 103 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials KMc | FILED FOR DOCKETING 01 AUG 23 PM 2:10 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CANAL BARGE COMPANY, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | Case No. 98 C 0509 |
| ) | |
| v. ) | |
| ) | Magistrate Judge Nan R. Nolan |
| COMMONWEALTH EDISON COMPANY, ) | |
| ) | |
| Defendant/Counter-Plaintiff. ) | |

### MEMORANDUM OPINION AND ORDER

Canal Barge Company ("Canal Barge") has filed a Complaint against Commonwealth Edison Company ("ComEd") seeking payment of two invoices for maintenance and insurance charges incurred in 1996-1997 for the upkeep of barges subject to a contractual agreement between the parties. ComEd admits that it failed to pay the amounts billed in the two invoices, and is asserting in its counterclaim that Canal Barge billed ComEd for invalid charges which fall outside the scope of the contract. This matter is before the Court on Canal Barge's Motion to Compel Production of Certain Documents Withheld as Privileged and to Compel Answers to Certain Deposition Questions of Former Employees (Docket Entry #79). For the following reasons, Canal Barge's Motion to Compel is granted in part and denied in part.

Canal Barge's motion is divided into two requests, both relating to ComEd's claim of attorney client privilege as to certain documents and testimony. Canal Barge first asks this Court to find that Larry Siler was not a member of ComEd's "control group" and that his communications

are therefore not protected by attorney-client privilege. Canal Barge next references specific documents and unanswered deposition questions to which ComEd has asserted attorney-client privilege, requesting the Court to find that the privilege does not apply.

**I. Was Larry Siler in the Control Group**

The parties agree that Illinois law governs the scope and application of the attorney-client privilege in this case. The leading attorney-client case involving a corporation is <u>Consolidation Coal Co. v. Bucyrus-Erie Co.</u>, 432 N.E.2d 250 (1982). There, the Illinois Supreme Court adopted the "control-group" test to determine when the privilege applies in a corporate setting. The <u>Consolidation Coal</u> court acknowledged that "as a practical matter, the only communications that are ordinarily held privileged under this test are those made by top management who have the ability to make a final decision." <u>Consolidation Coal</u>, 432 N.E.2d at 258. However, the court recognized that the privilege extended to a second tier of employees "whose advisory role to top management in a particular area is such that a decision would not normally be made without [their] advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority." <u>Id.</u> If such an employee is consulted to determine a legal course of action, that employee's communication is protected from disclosure. <u>Id.</u> The burden of proof on these matters lies with the party asserting the privilege. <u>Id.</u> at 257.

In this case, ComEd asserts that the following people were members of ComEd's control group: Michael Bales, Roland, Kratz, James Small, and Larry Siler. Canal Barge contends, however, that Larry Siler's own testimony at his deposition demonstrates that he was not part of ComEd's control group. Canal Barge argues that Siler testified that he had no direct responsibility for the transportation contract at issue, (Siler Dep. at 74), and that he stated that Jim Small, Roland Kratz,

2

and Mike Bales made the decision to award Canal Barge a requirements contract in 1994. (Siler Dep. at 101.) Siler testified that those same three individuals were responsible for authorizing payment of maintenance and insurance invoices from Canal Barge. (Siler Dep. at 103-04.) Siler also testified that Roland Kratz made the decision not to pay the $1.5 million invoice, and that he was not aware of what Kratz specifically relied upon to make his decision. (Siler Dep. at 145.) Canal Barge argues that this testimony proves that Siler was not one of the decision makers at ComEd with respect to the contract at issue, and that there is nothing to suggest that he provided advice regarding the contract which was relied upon by the top management at ComEd. (Pl.'s Mot. at 6.) Therefore, Larry Siler could not have been a part of the control group.

ComEd contends in response that Canal Barge failed to ask Siler the proper questions which would have established whether he was a member of the control group, and contends that Siler was, in fact, an advisor to the decision-makers at ComEd. (ComEd's Resp. at 3-4.) ComEd argues that Siler was never questioned regarding the role that he actually did play in the claims involving Canal Barge, and asserts that Siler's testimony at various points shows that he did provide advice to top management. For example, Siler testified that he was involved in discussions regarding this litigation (Siler Dep. at 24-25); that he reviewed invoices for the $1.5 million charge by ComEd (Siler Dep. at 26); that he was aware of Pete Merrill's review of the $1.5 million invoice (Siler Dep. at 39); that he was involved in a number of phone conversations with Mike Bales regarding this litigation (Siler Dep. at 40); that he was consulted on issues involving ComEd's dealings with Canal Barge after Mike Bales came on board (Siler Dep. at 75); that he was involved in direct conversations with Canal Barge after 1994 (Siler Dep at 75); that people other than Kratz had the authority to reject Canal Barge's $1.5 million invoice (Siler Dep. at 149); and that he acted as

3

consultant with respect to the $496,000 overcharge (Siler Dep. at 149). ComEd further points to the affidavit submitted by Mike Bales which unequivocally asserts that Siler was involved in the control group at ComEd as it related to any decisions involving Canal Barge, and that no decision was made regarding any of Canal Barge's claims without considering Larry Siler's opinion. (Bales' Aff. ¶¶ 5-7.) Bales further asserts that Siler frequently communicated and met with ComEd's attorneys to help determine the strategy to be used by ComEd in responding to the claims made by Canal Barge. (Bales Aff. ¶¶ 9-10.)

Based primarily upon Mike Bales' affidavit, the Court finds that Larry Siler was in ComEd's control group. While neither side asked Siler the relevant questions at his deposition to determine what his exact role was with respect to the transportation contracts, the Court finds there to be nothing in his deposition which contradicts ComEd's assertion that he was in the control group.[1] The Court is therefore left with Bales' affidavit. In his affidavit, Mike Bales is adamant that ComEd relied upon Siler's input and advice in making decisions regarding Canal Barge's claims, and the Court finds this to be the only clear evidence presented by either side as to the extent of Siler's involvement in Canal Barge's claims. The Court, therefore, finds that Larry Siler was a member of the ComEd's control group.

---

[1] Plaintiff contends in its Reply brief that Siler testified that Kratz made the final decision not to pay Canal Barge's invoice and that Siler's lack of information as to what Kratz used specifically to make that decision indicates that Siler was not a member of the control group relative to the decision not to pay the invoices. (Pl.'s Reply at 3-4.) However, the Court finds that Siler's testimony elsewhere in his deposition, as noted by ComEd, indicates that he was involved in the decision whether to pay Canal Barge for the $1.5 million invoice. The fact that neither party chose to directly ask Siler at the deposition the extent of his role with regard to the transportation contracts limits the usefulness of his deposition for determining whether he was in the control group.

4

## II. Canal Barge's Specific References to Disputed Privilege Log Entries and Deposition Objections

### A. Privilege Log

Canal Barge lists in its initial motion a number of disputed entries in the privilege log. However, in its Reply, Canal Barge withdraws many of its objections, leaving only three entries which are still disputed, two of which, (ComEd Bates Numbers 00364-00367 and 02409-02412), are based upon Canal Barge's contention that Larry Siler was not in ComEd's control group. As the Court has found that Siler was in the control group, the Court overrules these objections leaving only Canal Barge's objection to Bates Number 16681. ComEd describes this as handwritten notes of attorney Larry Laskey giving legal advice to ComEd which was viewed only by the control group. Canal Barge requests this Court conduct an *in camera* inspection of this document because ComEd refers to this single bates numbered log entry as "pages" of notes, rather than a single page, and also because Siler, it argues, was not a member of the control group. The Court believes that ComEd's reference to this log entry as "pages" was most likely a typographical error, and as the description of the subject matter indicates that this log entry is protected by the attorney-client privilege, regardless of the number of pages, the Court overrules Canal Barge's objection to Bates Number log entry 16681.

### B. Disputed Deposition Objections

Canal Barge next lists various instances during the depositions of Mike Bales and Larry Siler in which the deponent refused to answer questions on the advice of counsel based upon attorney-client privilege. Canal Barge asserts that the privilege does not apply to these questions, mostly because the questions were not attempting to discover the substance of the communications between

ComEd and its attorneys. Canal Barge cites to Condon v. Petacque, 90 F.R.D. 53, 54 (N.D. Ill. 1981) for its assertion that the "[t]he privilege does not foreclose inquiry into the fact of representation itself or the dates upon which services are rendered as long as the substance of the attorney- client relationship is shielded from disclosure. Thus, while the "structural framework" of the attorney-client relationship may be discovered, the substance of that relationship must remain confidential." Id. at 54. In Condon, the district court noted that the attorney-client privilege "protects from disclosure confidential communications made for the purpose of obtaining a lawyer's professional advice and assistance." Id. (citing Cohen v. Uniroyal, Inc., 80 F.R.D. 480, 482 (E.D.Pa.1978)). Canal Barge argues that the questions at issue merely sought information akin to the "structural framework" of the relationship between attorney and client, and that the questions did not elicit substantive information.

Canal Barge moves to compel responses to the following questions posed at the depositions of Bales and Siler:

**1) Bales Dep., page 182 and Bales Dep., page 184**: In both of these instances, Canal Barge asked Bales whether a decision was made to contest the entire invoice, to which counsel for ComEd objected, instructing his client not to address topics which were discussed amongst ComEd's attorneys, or its attorneys and the control group. The Court finds that these questions do not elicit privileged information between attorney and client, but merely request a factual statement as to whether a decision was made by ComEd regarding whether to contest Canal Barge's invoice. ComEd's objection to these questions is overruled.

**2) Bales Dep., pages 191-192**: Canal Barge asked whether Bales remembered if he advised Mr. Brigance at a particular meeting that he had spoken to or engaged Pete Merrill to review the

6

invoice. The Court finds that this question seeks a response regarding the substance of a discussion between Bales', a member of ComEd's control group, and one of ComEd's attorneys. Therefore, it falls under the protection of the attorney-client privilege.

**3) Bales' Dep., page 219 and Bales Dep., pages 220-224**: These questions by Canal Barge sought information as to who was responsible for determining which work was required to maintain the barges in a seaworthy and fit condition. These questions do not elicit confidential information protected by the attorney-client privilege. The fact that the individuals responsible for this important determination happened to be in ComEd's control group is unsurprising, and their status as control group members does not allow ComEd to refuse to answer any questions which relate to them. They only receive protection from any communications made between themselves and ComEd's attorneys. Canal Barge's questions do not seek out these confidential communications, but merely seek to know who at ComEd was responsible for making a determination regarding the necessity of the repairs to the barges. ComEd's objection to these questions is overruled.

**4) Siler Dep., page 126**: Canal Barge asked Siler what was discussed at a meeting which took place in mid-2000, at which Steve Brigance, Mike Bales, Pete Merrill, Pete Merrill's counsel, and Larry Siler were present. At this meeting these individual discussed the condition of certain barges that Merrill obtained for Midwest Generation which were in need of repair. At the deposition, ComEd objected to any questions relating to this meeting on the basis of attorney-client privilege. However, in its response to Canal Barge's motion to compel, ComEd no longer asserts attorney-client privilege, and now claims that it would be unfair to allow questioning regarding current business dealings of Canal Barge's competitor, Midwest Generation which would allow Canal Barge knowledge of Midwest's inner workings. Canal Barge argues that it is entitled to explore Merrill's

7

dealing with Midwest Generation insofar as Merrill brokered barges for Midwest which subsequently experienced severe maintenance problems. As ComEd appears to concede that the attorney-client privilege does not apply to this line of questioning, and Canal Barge has provided a reasonable explanation for its need to enter into this line of questioning, the Court overrules ComEd's objection to this question.

## IV. Conclusion

For the foregoing reasons, the Court finds that Canal Barge's Motion to Compel Production of Certain Documents Withheld as Privileged and to Compel Answers to Certain Deposition Questions of Former Employees (Docket Entry #79) is GRANTED in part and DENIED in part.

E N T E R:

Nan R. Nolan
United States Magistrate Judge

Dated: 8/23/01