Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 509 | **DATE** | 5/31/2002 |
| **CASE TITLE** | Canal Barge Co. vs. Commonwealth Edison Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: ComEd's motion for partial summary judgment as to Canal's amended complaint [132-1] is denied and ComEd's motion for partial summary judgment as to ComEd's counterclaim [135-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices: 2 | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | date docketed: JUN 03 2002 | 188 |
| | Notified counsel by telephone. | docketing deputy initials | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |



DOCKETED
JUN 0 3 2002

| | | |
|---|---|---|
| CANAL BARGE COMPANY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | No. 98 C 0509 |
| | ) | |
| COMMONWEALTH EDISON COMPANY, | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

Commonwealth Edison Company ("ComEd") contracted Canal Barge Company ("Canal") to transport coal on barges. The contract required ComEd to reimburse Canal for certain barge maintenance and insurance costs. Before the Court are ComEd's Motion for Partial Summary Judgment as to Canal's Amended Complaint (Docket Entry #132) and ComEd's Motion for Partial Summary Judgment as to ComEd's Counterclaim (Docket Entry #135). ComEd argues that it is entitled to summary judgment because: (1) the replacement or renewal of the internal framing of a barge can never be considered "maintenance" under the parties' contract; and (2) Canal admits that it overcharged ComEd for other maintenance charges. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, ComEd's motion for partial summary judgment as to Canal's amended complaint is DENIED and ComEd's motion for partial summary judgment as to ComEd's counterclaim is GRANTED.

### Background

Unless otherwise indicated, the following facts are undisputed. In 1978, the parties entered into a contract for the transportation of coal. (ComEd's Exs. in Support of Mot. for Partial Summ. J., Ex. 1A.) The parties set $214,000 (the Court is rounding to the nearest $1000) as a baseline

figure for the yearly cost of maintaining and insuring the barges ($214,000 was the cost of insuring and maintaining the barges for the June 1988 to July 1989 contract year). The contract requires ComEd to reimburse Canal for any yearly maintenance and insurance costs that exceed $214,000. If the maintenance and insurance costs are less than the baseline figure, however, the contract requires Canal to reimburse ComEd for the difference. This provision went unnoticed until 1994. At that time, Canal invoiced ComEd $178,703 for maintenance and insurance expenses for the years 1989-1994. (Canal's Resp. to ComEd's Statement of Material Facts in Support of Mot. for Partial Summ. J. on ComEd's Countercl., ¶ 11.) ComEd paid that amount. Canal admits both that it overcharged ComEd and that it has not repaid any of the money that was incorrectly invoiced to ComEd. (*Id.*, ¶¶ 12-13.) The amount of the overcharge, however, is in dispute. This overcharge is the focus of ComEd's counterclaim.

Canal's claims (the only other claims in this case) are based on the parties' differing interpretations of the third amendment to the contract—referred to as Amendment No. 3 to Transportation Contract (hereinafter "Amendment No. 3")—which became effective on July 1, 1994 and had a termination date of June 30, 1997. (ComEd's Exs. in Support of Mot. for Partial Summ. J., Ex. 3 ¶3.) Amendment No. 3 contains an integration clause stating that that document and another agreement (which the parties agree is not relevant to the current dispute) "exclusively and completely state the rights and obligations of the parties . . . and supersede all other agreements, oral or written." (*Id.*, Ex. 3 ¶17.2.)

According to Amendment No. 3, Canal agreed to provide and maintain barges for the transportation of coal and ComEd agreed to reimburse Canal for yearly maintenance and insurance

costs that exceeded the baseline amount of $214,000. Specifically, the pertinent provisions of the contract state:

> 2.1 To perform the transportation required hereunder, Canal shall provide and maintain for use under this Contract 56 conventional open hopper barges, 195' x 35' each, with a capacity of approximately 1500 short tons at 9.0 feet of draft (hereinafter collectively called "Barges"). The Barges are identified in Exhibit A. Canal will also provide towboats as required to satisfy its obligations hereunder (herein called "Towboats").
>
> 2.2 The Barges shall be assigned by Canal exclusively, except as described in Section 2.3, for the performance of this Contract and Canal shall have the obligation of seeing that they remain seaworthy and in every way fitted and safe for carrying cargoes of coal. Canal shall properly maintain, equip, and supply the Barges throughout the continuance of this Contract. The Towboats and their crews, the courses they shall follow and their navigation, and all matters affecting their safety shall throughout the continuance of this Contract be the sole responsibility of Canal and under its sole command, direction and control.
>
> * * *
>
> 5.2.d  <u>Insurance and Maintenance</u>.  After the end of each Contract Year an adjustment for insurance and maintenance of the Barges equal to the difference between the yearly cost of maintenance and insurance of the Barges in such Contract Year and the Cost thereof during the period July 1, 1988 through June 30 1989 ($214,311), shall be made. If such cost exceeds $214,311 Canal shall invoice Commonwealth for the difference and Commonwealth shall pay such invoice within 20 days of receipt thereof. If such cost is less than $214,311, Canal shall pay Commonwealth the amount of such difference no later than 20 days after such difference has been determined.

(*Id.*, Ex. 3 ¶¶ 2.1, 2.2, 5.2.d (emphasis in original).)

In its complaint, Canal seeks $1,616,317.39 for money spent on barge maintenance during the last year Amendment No. 3 was in effect—July 1, 1996 to June 30, 1997. (*Id.*, Ex. 1 ¶¶ 20, 21.) The parties agree that during this period of time Canal spent approximately $1,000,000 on the repair or replacement of the "internal framing" within the wingtanks of the barges. Canal contends that it repaired or replaced the "vertical frames" in several barges after the frames were damaged during

the normal course of handling. (Canal's Statement of Additional Facts Regarding Mot. for Partial Summ. J. on Canal's Am. Compl., ¶¶ 13-15, 17.)[1] In addition to the "internal framing" maintenance charges, Canal invoiced ComEd for approximately $100,000 worth of other maintenance charges. Although the majority of this additional work was completed prior to June 30, 1997—the date Amendment No. 3 terminated—Canal did not send the invoice to ComEd until after that date. (Canal's Resp. to ComEd's Statement of Material Facts in Support of Mot. for Partial Summ. J. on Canal's Am. Compl., ¶ 6; Canal's Exs. in Support of Mot. for Partial Summ. J., Ex. 13.)[2]

## Discussion

ComEd moves for partial summary judgment on both its counterclaim and Canal's claim that seeks reimbursement for the "internal framing" maintenance charges. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harbours Pointe of Nashotah, LLC v. Village of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1] The parties provide little elaboration on the terms "vertical frame" or "internal framing." Canal states that "[the v]ertical frames are steel beams that attach to the longitudinal beams that are secured to the steel pate [sic] that forms the hull of the barge." (Canal's Statement of Additional Facts, ¶12.) ComEd's motion does not elaborate on either term. Although ComEd provided a diagram of an open hopper barge, the diagram does not detail the "vertical frames" or the "internal framing" of the barge. (ComEd's Exs. in Support of Mot. for Partial Summ. J., Ex. 4.)

[2] ComEd withdrew its motion for partial summary judgment as to the approximately $100,000 worth of maintenance expenses.

248 (1986). "A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Id.* at 256.

**I. ComEd's Motion for Partial Summary Judgment as to Canal's Amended Complaint**

The parties' contract requires ComEd to reimburse Canal for yearly insurance and maintenance costs that exceed $214,000. (ComEd's Exs. in Support of Mot. for Partial Summ. J., Ex. 3 ¶ 5.2.d.) Pursuant to that provision, Canal billed ComEd for the repair or replacement of the internal framing of certain barges. ComEd refused to pay and Canal filed suit. The parties' dispute over this claim revolves around the proper interpretation of the term "maintenance" in paragraph 5.2.d of the contract.

Illinois courts follow the "four corners" rule of contract interpretation.[3] Under this rule, the court interprets contractual terms by looking at the language of the contract. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). The court must consider the entire contract, not just isolated provisions. *Premier Title Co. v. Donahue*, 765 N.E.2d 513, 516 (Ill. App. Ct. 2002). If a contractual term is unambiguous, the court applies the plain, ordinary meaning of that term. *Id.* A contractual provision is not ambiguous merely because the parties do not agree on the meaning of the provision, *Forest Glen Community Homeowners Ass'n. v. Bishof*, 746 N.E.2d 1285, 1289 (Ill. App. Ct. 2001); *Thomas v. Pearle Vision, Inc.*, 251 F.3d 1132, 1138 (7th Cir. 2001) (applying Illinois law), or because the provision is not defined in the contract, *Winter v. Minnesota Mutual Life Insurance Co.*, 199 F.3d 399, 408 (7th Cir. 1999) (applying Illinois law). A contractual term is

---

[3] Amendment No. 3 contains a choice-of-law provision designating Illinois law. (ComEd's Exs. in Support of Mot. for Partial Summ. J., Ex. 13 ¶15.) The Court and both parties agree that Illinois law governs this dispute.

ambiguous only if it is reasonably or fairly susceptible to more than one meaning. *Allied Asphalt Paving Co. v. Village of Hillside*, 731 N.E.2d 425, 429 (Ill. App. Ct. 2000); *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998) (applying Illinois law). Therefore, the Court must assess whether the term "maintenance" is reasonably susceptible to the interpretations urged by the parties.

ComEd argues that it is entitled to summary judgment as to the disputed charges because the plain and ordinary meaning of "maintenance" includes only that work which is necessary to preserve an object's existing state or condition. According to ComEd, any repairs that include the replacement or renewal of damaged, worn, or defective parts cannot be considered "maintenance." In support of its position, ComEd cites *Ross v. City of Chicago*, 522 N.E.2d 215 (Ill. App. Ct. 1988), a case that used *Black's Law Dictionary* to define the term "maintain" as it pertained to a city's duty to maintain roadways. The Court is not persuaded that either *Ross* or *Black's Law Dictionary* supports ComEd's position. The *Ross* court observed that *Black's Law Dictionary* defines "maintain" as "as acts of repairs and other acts to prevent a decline, lapse, or cessation from existing state or condition, . . . [to] keep in repair; keep up; preserve, . . . ." *Id.* at 218. Applying this definition to the city's duty to maintain roadways, the *Ross* court reasoned that maintenance includes, among other things, "the filling of potholes, or repairing deteriorated portions of the roadway." *Id.* Rather than supporting ComEd's position, the *Ross* court reasoned that the *repair* of a damaged part of a roadway is an act of maintenance. Similarly, *Black's Law Dictionary* does not support ComEd's argument. Canal correctly points out that the definition of "maintain" in Black's Law Dictionary includes the following: "[to] rebuild; repair; [or] replace. . . ." *Blacks Law Dictionary* 953 (6th ed. 1990). The Court also notes that the *Black's Law Dictionary* definition states that "maintenance"

includes "[t]he upkeep or preservation of condition of property, including cost of ordinary repairs necessary and proper from time to time for that purpose... Expenditures undertaken to preserve an asset's service potential for its originally-intended life; these expenditures are treated as periodic expenses or product costs. Contrast with Improvement." *Id.* at 953-54. Furthermore, the Court notes that dictionaries commonly define the term "repair" to include the replacement or renewal of damaged, worn, or defective parts. *E.g., Oxford English Dictionary* (defining "repair" as the "[r]estoration of some material thing or structure by the renewal of decayed or damaged parts, or by refixing what has given way; to mend") (parenthetical in original). *Oxford English Dictionary, available at* http://dictionary.oed.com. The Court concludes that ComEd's interpretation of "maintenance"—an interpretation that excludes any repairs that involve the replacement or renewal of damaged, worn, or defective parts—is unreasonable.

Canal defines "maintenance" as any repairs that are necessary to keep an object in working order, provided that the damage did not occur in a single incident. Under Canal's definition, the repair of damage incurred during the normal course of handling a barge, i.e., normal wear and tear, is maintenance. Canal's definition is consistent both with the portions of *Black's Law Dictionary* quoted in the previous paragraph and the following dictionary definitions: *The Oxford English Dictionary* defines "maintenance" as "[t]he action of keeping in effective condition, in working order, in repair...." *The Compact Oxford English Dictionary* 225 (2d ed. 1991). *The American Heritage Dictionary of the English Language* defines "maintain" as "[t]o keep in a condition of good repair or efficiency." *The American Heritage Dictionary of the English Language* 1055 (4th ed. 2000). *Webster's Third New International Dictionary* defines "maintenance" as "the labor of keeping something (as buildings or equipment) in a state of repair or efficiency." *Webster's Third*

*New International Dictionary* 1362 (3d ed. 1986). *The Random House Dictionary of the English Language* defines "maintain" as "to keep in an appropriate condition [or] operation." *The Random House Dictionary of the English Language* 1160 (2d ed. 1987). Based on these definitions, the Court concludes that Canal's interpretation of "maintenance" is reasonable.

The Court must next determine the plain and ordinary meaning of the term "maintenance." Courts commonly use dictionaries to determine the plain and ordinary meaning of unambiguous terms. *People v. Dexter*, __ N.E.2d __, No. 2-00-1279, 2002 WL 471249, at *2 (Ill. App. Ct. Mar. 21, 2002); *see also Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 772 (7th Cir. 2000). Based on the above definitions, the Court holds that "maintenance" means performing general upkeep, including any ordinary repairs that are necessary to keep an asset in working order for its originally-intended life. *Cf. Great West Casualty Co. v. See*, 185 F. Supp. 2d 1164, 1169 (D. Nev. 2002) (holding that the "plain and ordinary meaning of 'maintenance' encompasses the act of keeping the [asset] in working order through repairs or restoration").

As noted previously, a court's interpretation of a contract term must be consistent with other provisions of the contract. *Bourke*, 159 F.3d at 1038. ComEd's motion for summary judgment contains a two-sentence "argument" suggesting that a definition of maintenance that includes the term "repair" is inconsistent with paragraph 5.8 of Amendment No. 3. ComEd has waived this argument by failing to develop it and by failing to cite any legal authority. *Commodity Futures Trading Comm'n v. Tokheim*, 153 F.3d 474, 476 n. 3 (7th Cir. 1998) (stating that perfunctory and undeveloped arguments are waived). Even if the Court were to consider this argument, it would not persuade the Court to agree with ComEd's position. Paragraph 5.8 of Amendment No. 3 states:

> 5.8 Effective July 1, 1994, Commonwealth will pay Canal a Barge Charge of $40.00 per Barge per day for each day the Barges remain in use by Canal to provide transportation services to Commonwealth under this Contract. A Barge shall be considered to remain in such use notwithstanding any temporary unavailability because of routine maintenance or repair. Maintenance or repair that takes longer than 15 days to be accomplished shall be deemed not to be routine, and Commonwealth shall not be liable for a Barge Charge with respect to such Barge from the beginning of removal thereof for repair or maintenance until such Barge is again used under this Contract...

(ComEd's Exs. in Support of Mot. for Partial Summ. J., Ex. 3 ¶5.8.) ComEd's position seems to be that the presence of the phrase "routine maintenance or repair" in paragraph 5.8 establishes that the parties considered the terms "maintenance" and "repair" to be mutually exclusive. The Court disagrees. Paragraph 5.8 is perfectly consistent with the plain and ordinary meaning of "maintenance" which recognizes that there are some ordinary repairs that are maintenance and some repairs that fall outside of the realm of maintenance, e.g., the repair of damage incurred during an accident. This paragraph does not establish that the terms "repair" and "maintenance" are mutually exclusive.[4]

In order to prevail on its motion for partial summary judgment, ComEd must convince the Court that the plain and ordinary meaning of "maintenance" does not include any repairs that involve the replacement or renewal of damaged, worn, or defective parts. As stated above, however, the Court concludes that ComEd's interpretation of "maintenance" is unreasonable.[5] Based on the

---

[4] Similarly, ComEd argues that any work meant to make the barges "safe" or "seaworthy" cannot be considered maintenance. ComEd provides no reason why work that renders a barge "safe" or "seaworthy" is necessarily mutually exclusive of maintenance. Although that these terms may not completely overlap, it does not follow that the terms are mutually exclusive.

[5] But even if the Court were to agree with ComEd's interpretation of "maintenance," the Court would conclude that ComEd is not entitled to summary judgment. ComEd failed to present the Court with any facts regarding the "internal framing" repairs. Although ComEd's motion refers to these repairs as "the ripping out and replacement of the vertical cords which comprise the internal

Court's determination that "maintenance" is an unambiguous term and that the plain and ordinary meaning of "maintenance" is performing general upkeep, including any ordinary repairs that are necessary to keep an asset in working order for its originally-intended life, the Court denies this portion of ComEd's motion for partial summary judgment.

## II. ComEd's Motion for Partial Summary Judgment as to ComEd's Counterclaim

ComEd seeks partial summary judgment on its claim that Canal breached the parties' contract when it improperly billed ComEd for maintenance expenses that both parties agree were not chargeable to ComEd. The undisputed facts establish that (1) pursuant to the contract, Canal charged ComEd for certain maintenance and insurance expenses for the years 1989-1994, (2) the invoice Canal sent to ComEd incorrectly included expenses not chargeable to ComEd, (3) ComEd paid the amount invoiced by Canal, and (4) Canal has not repaid any of the money paid by ComEd. (Canal's Resp. to ComEd's Statement of Material Facts in Support of Mot. for Partial Summ. J. on ComEd's Countercl., ¶¶ 11-13; Canal's Mem. in Opp'n to Mot. for Partial Summ. J. on ComEd's Countercl. at 3-5.) However, the parties dispute the amount Canal overcharged ComEd. ComEd argues that a $469,000 expense should not have been included in the invoice and Canal argues that some (although not all) of the $469,000 was properly charged to ComEd. Regarding the counterclaim, ComEd moves the Court to enter summary judgment only as to Canal's liability, i.e., that Canal overcharged ComEd, and to submit the amount of damages to the jury.

---

structure of the barge," ComEd fails to support that statement with any admissible facts. ComEd cites to invoices for these repairs, but these documents merely state that a company "renewed" "cords" located in the "wingtanks" of the barges. (Exs. in Support of Def.'s Mot. for Partial Summ. J., Ex. 42.) Other than this vague statement on the invoices, ComEd's motion does not cite to any facts describing the disputed repairs.

Canal argues that summary judgment is inappropriate for two reasons. First, Canal contends that it did not breach the contract because it did not intentionally overcharge ComEd. As ComEd correctly points out, however, it is immaterial whether Canal's breach was intentional or unintentional. *Album Graphics, Inc. v. Beatrice Foods Co.*, 408 N.E.2d 1041, 1050 (Ill. App. Ct. 1980) (fault is irrelevant to breach of contract); *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 279 (7th Cir. 1992) (liability for breach of contract is strict under Illinois law); *Toys "R" Us, Inc. v. NBD Trust Co. of Illinois*, No. 88 C 10349, 1995 WL 591459, at *45 (Oct. 4, 1995) (same). Second, Canal argues that summary judgment is inappropriate because the parties dispute the amount of damages. The fact that parties dispute the amount of damages does not preclude the entry of summary judgment on the issue of liability. Under Federal Rule of Civil Procedure 56(c), a court may enter judgment as a matter of law on the issue of liability alone, even though a genuine dispute remains as to the amount of damages. Fed. R. Civ. P. 56(c). Based on Canal's admissions that it incorrectly overcharged ComEd for maintenance and insurance costs for the years 1989-1994 and that it has not repaid any of the overcharge, the Court concludes that ComEd is entitled to partial summary judgment as to Canal's liability on the counterclaim. The amount of damages, i.e., the exact amount of the overcharge, will be submitted to the jury.

## Conclusion

For the foregoing reasons, this Court DENIES ComEd's motion for partial summary judgment as to Canal's amended complaint and GRANTS ComEd's motion for partial summary judgment as to ComEd's counterclaim.

ENTER:

*Nan R. Nolan* (signature)

Nan R. Nolan

United States Magistrate Judge

Dated: May 31, 2002