FILED

JUN 1 4 2002

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MATE JUDGE NAN R. NOL:

| | | |
|---|---|---|
| CANAL BARGE COMPANY, | ) | |
| a Louisiana corporation, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 98 C 0509 |
| | ) | |
| v. | ) | Honorable Nan R. Nolan |
| | ) | Magistrate Judge |
| COMMONWEALTH EDISON COMPANY, | ) | |
| An Illinois corporation. | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

DOCKETED

JUN 2 0 2002

## COMMONWEALTH EDISON COMPANY'S MOTION TO BAR
## THE TESTIMONY OF CANAL BARGE COMPANY'S EXPERTS,
## JERALD TINKEY, ROBERT TAYLOR AND MICHAEL SCHIEHL

NOW COMES the Defendant, COMMONWEALTH EDISON COMPANY [hereinafter "ComEd"] by and through its attorneys HOFFMAN, BURKE AND BOZICK, and before the trial and selection of the jury in this cause, moves this Honorable Court, *in Limine*, to bar the testimony of CANAL BARGE COMPANY'S [hereinafter "Canal"] experts, Jerald Tinkey, Robert Taylor and Michael Schiehl, and in support thereof states as follows:

1.     Attached hereto are the Rule 26 disclosures of Canal's experts in this case (Exhibit 1).

2.     None of the experts disclosed by Canal are qualified to give expert testimony in the fields covered by their opinions.

3.     None of Canal's disclosed experts have a sufficient basis for any of their opinions

4.     The claimed experts shall be discussed individually as follows.

## **JERALD TINKEY**

5.      A review of the qualifications of Jerald Tinkey attached to Canal's Rule 26 disclosure clearly show that Mr. Tinkey is nothing more than a former business person for a barge company. There is nothing in Mr. Tinkey's qualifications that qualify him as an expert in any area whatsoever.

6.      In his report dated December 18, 2001 Mr. Tinkey only uses the word "opinion" three times. His opinions are as follows:

       a.      "From an operational standpoint, if I was charged with the administration of this contract, it is my opinion that the term "maintenance" includes the necessary repair and replacement of internal frames to maintain the structural integrity of the barges and to allow the barges to meet their normal useful life."

       b.      "In my opinion, cable operated cranes that utilize heavy clam buckets and require barges to be moved by hauling equipment inflict the greatest level of physical damage to the barge of any system I have observed or dealt with from the barge maintenance standpoint."

       c.      "It is my opinion that the life of a barge is determined primarily by the integrity and thickness of the side and bottom plates."

7.      Mr. Tinkey's subjective view as to how he would interpret the contract is not an allowable subject matter of expert testimony.

8.      Mr. Tinkey's opinion as to what the term "maintenance" means is not the allowable subject matter of expert testimony.

9.      Mr. Tinkey has no knowledge as to the useful life of any barge nor has he even attempted to express any opinion as to the useful life of any barge.

10.     There is no indication that Mr. Tinkey ever personally viewed the loading or unloading of any coal barge at any ComEd facility. His observations as to the claimed abuse by

2

clam shell bucket operators at other undisclosed locations cannot be the basis of any opinion relating to ComEd facilities.

11.     There is nothing in Mr. Tinkey's qualifications that in any way even remotely suggest that he is qualified to express opinions as to the "life of a barge".

12.     In the remainder of Mr. Tinkey's report it is impossible to determine what are claimed opinions and what are subjective viewpoints. The following objections, however, can be noted as to his report.

a.    He claims to have only looked at one barge involved in this case. It is unknown when that viewing took place or what if anything he observed during that viewing. This cannot be the basis for any opinion because of its vagueness.

b.    His subjective viewpoint as to the primary disagreement of the parties is not the subject matter of expert testimony.

c.    There is no indication that Mr. Tinkey has any practical experience relating to open hopper barges let alone open hopper barges carrying coal.

d.    There is no evidence that Mr. Tinkey has any expertise in the area of maintenance "criteria" of open hopper barges hauling coal. His subjective belief that the "criteria" is the sole responsibility of a "prudent manager" is not the subject matter of expert testimony.

e.    His speculation that these barges were "undoubtedly working in transportation service which places extreme operational requirements on the equipment" is not supported in any way.

f.    His hearsay conversations with people who he infers are more knowledgeable than he cannot be the basis of any expert opinion.

g.    The Rule 26 disclosure does not contain any evidence of any qualifications of Mr. Tinkey relating to the structure of open hopper barges or any qualifications to express any opinions as to the importance, necessity or function of any part of an open hopper barge.

h.    His reliance on the views of Mr. Poppelwell, who himself was not disclosed as a Rule 702 expert, cannot be the basis of any opinions by Mr. Tinkey.

     i.      His visit to one barge on an undisclosed date cannot form the basis of his statement that "management was able to defer maintenance in an effort to accommodate customer needs." There is further no information to support any knowledge that he knew of the "customer needs".

     j.      His subjective view that Canal "prudently elected to accomplish the necessary repairs" is totally unsupported by any basis.

     k.      There are no qualifications listed with respect to Mr. Tinkey that he has any knowledge as to what are "necessary" repairs of an open hopper barge which hauls coal.

     l.      There is no information listed that Mr. Tinkey has any knowledge as to the cycle times or loading capacities of any barge which is the subject of this lawsuit.

## **ROBERT TAYLOR**

13.    Robert Taylor is purportedly a naval architect and marine engineer. Mr. Taylor, however, has listed absolutely no practical experience with open hopper barges of the type at issue in this case

14.    Mr. Taylor has no experience involving barges hauling coal.

15.    Mr. Taylor relies upon pictures as forming the basis of his opinions, yet the pictures are not identified in any way nor were they provided to ComEd's attorneys with the Rule 26 disclosures.

16.    There is no foundation as to the reliability of "structural drawings" reviewed by Taylor nor were these drawings provided to ComEd counsel with the Rule 26 disclosure.

17.    Contained in another motion *in limine* is ComEd's motion regarding supplemental documents provided to ComEd attorneys after the deadlines imposed.

18.    There is no evidence that Mr. Taylor ever viewed the loading or unloading of coal at a ComEd facility. There is no evidence that he ever viewed the process anywhere.

4

19.     There is no evidence that he had any knowledge or information as to the operational loads of any barge in ComEd service.

20.     There is no evidence or information that he had any knowledge or information as to the "likely conditions encountered in the normal river" nor any information as to the actual conditions of any waterway that the involved barges experienced.

21.     His experiment in which somehow "holds were filled completely with 1350 tons of coal" is not supported as a basis by any knowledge or information that was provided to Mr. Taylor.

22.     His experiment that loaded coal to 119 inches is not supported by any information known by Mr. Taylor or provided to him.

23.     The "strip beam theory" and the "Von Karmen plate theory" are not defined or explained in any way.  There is no support in his opinions that these theories are accepted in any field of science or technology as it relates to open hopper barges hauling coal.

24.     There is nothing to indicate that Mr. Taylor has any expertise in the area of necessity of maintenance or repairs of open hopper barges.

25.     There is nothing to indicate that Mr. Taylor has any expertise as it relates to what might or could happen if certain repairs or replacements were not performed on open hopper barges.

26.     There is no evidence or indications in his report that any of his methodology used in this case is accepted in any field of expertise.

5

## MICHAEL SCHIEHL

27.     Mr. Schiehl ,according to the Rule 26 disclosure, is a marine surveyor and nothing more.

28.     His highest level of formal education is a high school degree (Schiehl deposition page 189.)

29.     According to Mr. Schiehl, he went for one semester to the University of Florida where he majored in "partying".   (Schiehl dep., p. 189)

30.     While he took some accident reconstruction courses, they have no bearing on his opinions in this case. ( Schiehl dep., p. 191)

31.     None of the organizations or societies of which he is a member have any bearing on his opinions. (Schiehl dep. p. 194.)

32.     He never took any courses in engineering other than some courses dealing with electrical engineering. (Schiehl dep. p. 202)

33.     The photos that he bases his opinions on were all taken in 1994, several years before the alleged work performed by Cana.  (Schiehl dep. pp. 23-24)

34.     His opinions are based upon being on only 12 of the 56 barges back in the year 1994. (Schiehl dep. p. 58).  Further, during that viewing he only went into one wing tank in each barge. (Schiehl dep. p. 73-74).

35.     He has his own peculiar definition of maintenance which is "Maintain the suitability of the barge for its intended service" (Schiehl dep. p. 66)  Any opinion using that definition would certainly be misleading, and inaccurate.

36.     Mr. Schiehl has no knowledge of the number of cargo discharges in any year (Schiehl dep. p. 78)

37.     Mr. Schiehl's claimed opinions and the basis thereof are contained in his deposition at pages 35 through 53. At those pages it is clearly and obviously evident that the bases listed as support of each opinion is insufficient. For the most part, Mr. Schiehl's opinions are based upon: viewing the few pictures he took of a few barges in 1994; his personal experience; and other conclusions that he made. What is totally lacking as the basis of any opinion formulated by Mr. Schiehl is sufficient facts or material on which any opinion can be based. His methodology of relying upon insufficient bases cannot support the opinions he has made.

38.     Mr. Schiehl has demonstrated absolutely no qualifications or experience as to any expertise in determining the cause of any condition or damage to an open hopper barge.

39.     Mr. Schiehl has demonstrated absolutely no qualifications to express expert opinions as to the need or necessity of any repair or replacement to an open hopper barge.

40.     Mr. Schiehl has demonstrated absolutely no qualifications to allow him to express any expert opinion as to the structural integrity or the effect of various forces upon the structural components of an open hopper barge.

41.     At best, Mr. Schiehl's opinions are his subjective views as a surveyor into areas in which he is not qualified as an expert.

42.     At his deposition, Mr. Schiehl was specifically asked as to what qualified him to express opinions as to stress fractures in barges. His answer was limited once again to his experience. (Schiehl dep. pp. 98-99)

43.     Despite giving opinions as to the clips and welds allegedly done by Canal, he admitted in his deposition that he never saw any of the clips and welds done on any of the barges. (Schiel dep. p. 102)

7

44.     Despite giving opinions that the renewal of the cords was justified for the continued safe operation of the barges, he testified at his deposition at pages 111-112 that he has no evidence that the involved barges would be either unsafe or unfit to complete the contract term of July 1, 1997. The completion of the contract term it should be noted was only a few short months after the work done by Canal.

45.     Despite expressing views that the "wing void plate stabilization accomplished with welds and clips was nothing more than a temporary repair, at his deposition Mr. Schiehl admitted, at pages 102-103, that he had no idea how much longitudinal strength was returned by the welding and clipping.

46.     At page 105 of his deposition, Mr. Schiehl he stated that he didn't know if the barges would have been in an unsafe condition if the welds and clips had not been put in.

47.     At the time of his deposition, he was unable to state the useful life of any barge prior to the work being performed in 1996 and 1997.

48.     Mr. Schiehl is unqualified as an expert to express any opinions in this case. His only qualification as a marine surveyor is to identify damaged areas on a barge or otherwise note the condition of a barge. There is absolutely nothing in his qualifications beyond that.

49.     There is nothing in his qualifications that he is qualified to express opinions as to failure analysis of any type relating to an open hopper barge.

50.     Mr. Schiehl, according to his deposition, never saw any of the 56 barges involved in either loading or unloading coal at a ComEd facility. He did, however, see one still picture of a bucket in the cargo hopper of a barge. He cannot express any opinions relating to the loading or unloading process or its effects.

8

51.     Mr. Schiehl, as is stated in another motion *in limine* cannot express any opinions as to what maintenance is or isn't.

52.     A reliable methodology must be used by any expert expressing an opinion at trial. It is for the trial court to determine if evidence offered under Rule 702 is both relevant and reliable. Masters v Hesston Corporation 2002 WL 1075809 (7th Cir. (Ill).

53.     A Daubert inquiry must be conducted to determine if there is question that an expert is qualified by knowledge, skill, experience, training or education and (1) the testimony is based upon sufficient facts or data (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case" Fed R. Evid. 702 Ueland v United States 2002 1159627 (7th Cir.(Ill)).

54.     A non-exclusive list of factors to aid judges in determining whether particular expert opinion is grounded in reliable scientific or technical methodology is contained in Daubert v.Merrell Dow Pharmaceuticals, 509 at 593-94 U.S. 579, 113 S.Ct. 2786 (1993). Among the factors to be considered are (1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community.

55.     In Kumho Tire Company Ltd. v. Carmichael, 119 S.Ct. 1167 (1999) the Supreme Court used the Daubert analysis to review the reliability of an engineering experts testimony. In Kumho at 1170, the court noted the issue was whether the expert could determine the cause of a failure of a tire. It was noted that there was no indication in the record that other experts in the industry used the experts particular approach nor were there any references to articles or papers that validated the experts approach. It was also noted at 1178 that the trial court must decide

9

whether a particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issue in the case. Lastly the court pointed out at 1179 that Nothing in either Daubert or the Federal Rules of Evidence requires a District Court to admit opinion evidence that is connected to existing data only by the "ipse dixit" of the expert.

WHEREFORE, COMMONWEALTH EDISON COMPANY, requests of this Court the following relief:

A.  That this Court conduct a Daubert inquiry as to each of Canal's disclosed experts;

B.  That the expert opinions disclosed in their Rule 26 opinions be barred because each disclosed expert is unqualified to express opinions as outlined in this motion;

C.  That the Court find that the basis of each experts opinions are either unknown or insufficient to support the bases of an experts opinion and bar the experts opinions;

D.  That the Court find that the methodology used by the disclosed experts is unreliable, and, therefore, bar the experts' opinions

Respectfully Submitted,

Attorney for Defendant/Counter-Plaintiff
COMMONWEALTH EDISON COMPANY

GARY W. BOZICK
GREGORY THOMAS CONDON
WILLIAM J. LEONARD
HOFFMAN, BURKE AND BOZICK
77 West Washington Street, Suite 1400
Chicago, IL 60602
(312) 372-2476

STATE OF ILLINOIS     )
                           )     SS.
COUNTY OF COOK     )

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn, deposes and says that he served the following:

**COMMONWEALTH EDISON COMPANY'S MOTION TO BAR
THE TESTIMONY OF CANAL BARGE COMPANY'S EXPERTS
JERALD TINKEY, ROBERT TAYLOR AND MICHAEL SCHIEHL**

by hand delivering a copy of same to:

> Warren J. Marwedel, Esquire
> Shari Friedman, Esquire
> William Ryan, Esquire
> Marwedel, Minichello & Reeb, P.C.
> 10 South Riverside Plaza, Suite 720
> Chicago, IL 60606

on June 14, 2002, before the hour of 6:00 p.m.

_____

SUBSCRIBED and SWORN to
before me this 14th day
of June, 2002.

_____
NOTARY PUBLIC

JENNIFER OBERLIN
NOTARY PUBLIC - ILLINOIS
DU PAGE COUNTY
My Commission Expires
January 05, 2004

*See Case File for Exhibits*